Day, J.
The plaintiff,, a • duly organized corporation, claims a leasehold -estate with the right to drill for and produce oil and gas .-on the 70 acre farm of- W. .LI.' Decker, *102 in Jackson township, Hancock county. Plaintiff’s lease was executed on August 17, 1896. The action is brought against Dorney & Harris to enjoin them from entering upon the said 70 acres and drilling for, or producing oil or gas thereon, which it is averred they are threatening to and will do unless restrained; and the prayer of the petition is for a perpetual injunction and the cancellation of two leases, for the same premises, given, one in 1893, by W. L. Decker, and one in 1897, by Mrs. Anna Altman, to the defendants. Defendants Dorney & Harris assert the validty of their two leases and the invalidity of the plaintiff’s lease,and ask to have their title quieted as against plaintiff, and for costs.
There is no dispute as to the material and controlling facts. The facts are: Anna Altman has an estate for life in the 70 acres, which she has not formally conveyed away. She, however, put her son W. L. Decker, who owns ' the fee subject to said life estate, in possession of the 70 acres to occupy and use as his home, and he has so used and occupied the same for more than ten years, and his mother has lived in his family and has been supported by him. The son has paid the taxes for ten or more years. On January 28, 1893, the son made a lease to Dorney & Harris. This lease contains the following provision: “If no well is completed within one year from this date — January 28, 1893 — 'then this grant shall become null and void, unless second party shall pay to the first party seventy dollars for each year thereafter such completion is delayed.’’ No well was completed within one year, or, at all, and no rental was paid at the expiration of one year, or at all; but in May, 1897, Dorney & Harris tendered $210 in payment of rent, which was refused by Decker. On August 17, 1896, Decker made and delivered a lease to the Kenton Gas and Electric Company, which company has paid rental, as per contract of lease, up to November, 1898. Both of .these *103 leases were valid at their execution, were sufficient in form, and were properly acknowledged and recorded. Mrs. Altman made a lease of the same 70 acres for oil and gas purposes on May 27, 1897, and received $90.00 of the $100.00 rental agreed to be paid her; but the next$ day paid the $90.00 back to Mr, Harris,and demanded her deed of lease from him, which demand Harris declined to accede to. This last lease was also sufficient in form, and was properly acknowledged and recorded. Each of the leases were for a term of five years and so long as oil or gas was found in paying quantities Dorney & Harris hauled some material for a derrick on to the premises in May, 1897, and were intending to enter and drill a well, when they were prevented by the temporary injunction allowed at the commencement of this case.
Both parties claim the right to possess and operate the 70 acres; plaintiff, by virtue of the lease of 1896, and defendants, in virtue of the prior lease of 1893, and the lease from the life tenant, made in 1897; and the question pressing for answer is, which claimant is entitled — which lease is valid! and subsisting, if either of them is. If the lease of 1893 is-still subsisting and valid,it is manifest that that of 1896 is-invalid and ineffectual. If, however, the lease of 1893 has, become forfeit and void from any cause, the lease of 1896, so far as the interest of the remainderman or reversioner is-concerned, is valid and effectual, and gives the plaintiff' company full right, as against all the world save and except; the life-tenant, Mrs. Altman; aud it is believed that the’ most she could do in ths premises, would be to prevent any development under the lease without her consent. So the important question first pressing for solution is: Is the lease of 1893 still in force, or has it for any cause become forfeit by its own terms?
The provision for forfeiture, in case of non-completion of a well, and non-payment of rent, is plain and unambiguous, and cannot well be misunderstood.
*104 “If no well is completed within one year, then this grant shall become null and void, unless second party shall pay first party $70.00 for each year thereafter, such completion is delayed.’’
It is certain no well was ever drilled; nor was any rental paid for delay. One or the other of these conditions must have been performed to save the grant from becoming null and void. Either the completion of a well, or the payment of rent is essential to save the grant; and neither has occurred. Defendants seem to believe, that in some mysterious way the tender and offer to pay rent, in 1897, in May, more than three years after the lease became void for non-completion of a well by its own terms, bad the effect to open up the defaulted payment, and restore defendants to their rights under the lease, precisely as they were at the expiration of the year allowed for the completion of a well, when they had the right to prolong the life of the lease by the payment of rent, We think this view cannot be entertained or considered as in any way justified by the wording of the lease. The provision is, that the term of the lease can be contiued, or rather, the grant saved from becoming void, by the payment of money. Something active must be done to save a forfeiture. Payment must be made to have a saving effect. The provision is not a negative one, but is distinctly affirmative, and no construction, even the most strained, will allow the defendants to save their rights under the lease, on credit. Money down — Cash in advance and “no credit here” seems to be the rule established by the contract under consideration. The affirmative, active things required by the stipulations of the lease, to save it from becoming null and void, were not done or attempted; and the conclusion seems imperative, that the lease became void by the force of its own provisions. The provision for forfeiture, in this case, is mandatory, and does not merely confer on the leasor an option to declare a forfeiture for his *105 own protection, but provides for forfeiture absolutely, unless the leasee does something to prevent it. But if that were not so, and, as has been held by the supreme court in one case, the provision of forfeiture is for the benefit of the. lessor and gave him an option or" election to declare a forfeiture, or not, as he might deem best; and requiring an election, on his part, to terminate the grant; still we are of opinion the term provided by the lease is ended. The making of the lease to plaintiff in 1896, must be regarded as the exercise of the option and an election, by Decker, to terminate the lease of 1893. On either ground, or upon both, we hold the lease to Dorney & Harris, made in 1893, has become void and of no effect.
We are also of opinion that the lease executed by the life tenant, in 1897, was ineffectual to vest in defendants any interest in the 70 acres, by reason of want of power in the life tenant to convey such interest. It is well settled that a tenant for life, in possession of real estate, has no right or power to defeat the title or injuriously affect the interest of the remainderman, by alienating or disposing of some portion of the real estate; or even by using it in such way as to injure the reversionary interest and depreciate its value. The commission of waste' forfeits the life estate to the remainderman. The supreme court holds, that petroleum, oil and gas in their place in land, is part of the realty, and so remains until it is produced, when its character changes and it becomes chattle property. In this respect, petroleum is similar to standing and growing timber. While standing and growing, it is real estate, but when severed, it becomes personal property. A life tenant would have no more right to contract away the mineral part of the land, than to dispose of the standing and growing timber. The doing of either would amount to waste, and would have the effect to forfeit the life estate to the reversioner. The old lady took cne step toward the commission of waste, but *106 retraced and withdrew before consummating it, To enforce her contract would be to enforce a wrong, and would have the effect to deprive her of her only means of support in the •sunset of her life; and this the court declines to do, The defendants Dorney & Harris acquired no rights — no legal rights — under the lease from the old lady; and it seems to us certain the lease of 1893 became null and void, by its own terms, in 1894, and certainly so in 1896; and from any view we are able to take, Dorney & Harris have nothing of interest in the 70 acres in controversy. Plaintiff has some interest — -has a valid and subsisting contract of lease from the remainderman, that entitles it to maintain this action, and, with the consent of the life tenant, may entitle it to operate the land for oil and gas.
Frank 0. Daugherty and Jno. F. Betts, for Plaintiff.
Blackford and Blackford, for Defendants.
There will be a finding for plaintiff, and the injunction .will be made perpetual, with costs to the defendants.